**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

PATRICIA BAILEY,                              )
                                              )
             **Plaintiff,**                   )
                                              )         **CIVIL ACTION**
v.                                            )
                                              )         **No. 08-2321-KHV**
MICHAEL J. ASTRUE,                            )
COMMISSIONER OF SOCIAL SECURITY,              )
                                              )
             **Defendant.**                   )
_____)

**MEMORANDUM AND ORDER**

Plaintiff appeals the final decision of the Commissioner of Social Security to deny disability benefits under Title II of the Social Security Act, 42 U.S.C. § 401 et seq. For the reasons set forth below, the Court affirms the Commissioner's final decision.

**I.      Procedural Background**

This case has a long and tortured history which spans nearly ten years and includes proceedings before four different administrative law judges and two United States District Judges. We begin on September 19, 2003, when plaintiff filed an application for disability insurance benefits, alleging disability since January 1, 1996, due to tennis elbow, lower back pain, spur on spine, degenerating disc problem, arthritis, knee pain and swelling, nerve damage to right foot and carpal tunnel in wrist. Administrative Record (Doc. #10) filed January 26, 2011, at 10-2, 91.[1] The Commissioner denied plaintiff's application on November 21, 2003. Id. at 47-50. On December 9, 2003, plaintiff filed a request for reconsideration, which was denied

_____

[1]      Plaintiff contacted the Social Security Administration on September 2, 2003 to complete a "LEADS/PROTECTIVE FILING WORKSHEET" and schedule an application appointment for September 19, 2003.

on February 4, 2004.  Id. at 51-55.  Plaintiff then requested a hearing.  Id. at 56.  On September 21, 2004, plaintiff appeared without counsel at the initial hearing before ALJ Michael Dayton, who continued it to allow plaintiff time to find representation.  Doc. #10-3, at 75, 79-80.  Unable to secure counsel, plaintiff represented herself at a hearing on January 27, 2005, before ALJ William H. Rima II.  Id. at 83.  On March 7, 2005, ALJ Rima issued a decision which found that plaintiff was able to perform her past relevant work and therefore was not disabled within the meaning of the Act.  Doc. #10-2, at 29-35.  In that decision, the ALJ concluded that while plaintiff had "severe" spondylolisthesis and degenerative disc disease before December 31, 1997—her last date insured—her ailments did not meet or equal the severity of any impairment in the Listing of Impairments.  Id. at 34.

Plaintiff requested Appeals Council review, which was denied, so she filed D. Kan. Case No. 05-2508-CM, seeking judicial review of the ALJ decision.  On September 8, 2006, United States Magistrate Judge John Thomas Reid issued a report and recommendation which recommended reversal and remand of the ALJ decision.  Doc. #10-3, at 103-120.  Specifically, Judge Reid concluded that (1) the record revealed no basis for the ALJ assessment of plaintiff's residual functional capacity and (2) the ALJ did not evaluate or make specific findings regarding the physical and mental demands of plaintiff's past relevant work.  Id. at 115, 117-18.  On October 10, 2006, United States District Judge Carlos Murguia issued an order which adopted Judge Reid's report and recommendation and remanded the case for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).  Id. at 102.

Pursuant to the remand order, ALJ Jack R. Reed then held two hearings on plaintiff's case before issuing a decision on March 18, 2008.  Id. at 95-101.  In that decision, he found that plaintiff was not disabled at any time before her insured status expired.  Specifically, he found

that through her last date insured, plaintiff had the medically determinable impairment of low back pain, but that it was not a severe impairment under 20 C.F.R. § 404.1521.  Id. at 98-100.

Again, plaintiff sought judicial review, filing this case on July 15, 2008.  Before answering, the Commissioner asked the Court to remand the case pursuant to sentence six of U.S.C. § 405(g) to develop and clarify the record about plaintiff's alleged mental impairment from August of 1996 through December of 1997.[2]  Doc. #9.  The Court thus remanded the case by order dated February 2, 2009.  Pursuant to the sentence six remand, ALJ Debra Bice held a hearing on June 7, 2010 and, on August 25, 2010, issued a de novo decision finding once more that plaintiff was not disabled at any time before her insured status expired. Doc #10-4, at 158-163, Doc. #10-5, at 1-8.  Specifically, ALJ Bice found that through her last date insured, plaintiff had the severe impairment of low back pain, but that it did not meet or equal the severity of any impairment listed in 20 C.F.R. §§ 404.1520(d), 404.1525 or 404.1526.  Doc. #10-5, at 1-3.  ALJ Bice concluded that through plaintiff's last date insured (December 31, 1997) she had the residual functional capacity to perform a full range of work at all exertional levels, with the nonexertional limitations that she (1) should avoid working in hazardous environments (around unprotected heights, dangerous machinery or water) and (2) cannot perform detailed or complex tasks which take more than six months to learn.  Id. at 3-7.  The ALJ concluded that through plaintiff's last date insured, she could perform past relevant work as an electronics assembler and mail sorter and that she was thus not under a disability at any time between August 1, 1996 and December 31, 1997.  Id. at 7-8.

---

[2]      At the hearings before ALJ Reed after the first remand, plaintiff amended her alleged disability onset date from January 1, 1996 to August 1, 1996 and then from August 1, 1996 to January 1, 1997.  At the hearing before ALJ Bice after the second remand, the parties reverted to the August 1, 1996 alleged onset date with no mention of the amendments.

On January 31, 2011, plaintiff amended her complaint to include the August 25, 2010 adverse decision, and on May 31, 2011, she filed her opening brief.  See Doc #20.

## II.   Facts

The following is a brief summary of the facts presented to the ALJ.

### A.  Plaintiff's Testimony

Plaintiff is now 66 years old and has a GED.  From 1989 through 1992, she worked full-time as a sewing-machine operator.  Before that, she worked as an assembler of hand-held radios and stayed home raising her children.  In 1992, plaintiff married, quit her job, and moved with her new husband to his farm, where she has helped him with paperwork, paying bills, running errands, picking up parts, fixing lunch for farm workers and other related tasks.  From July through November of 1996, plaintiff cared full-time for her mother, who was suffering from pancreatic cancer.  Hospice paid plaintiff to care for her mother as a home health aide.[3]  Her mother died in November of 1996.  Plaintiff also helped care for her mother-in-law by taking her shopping and to rehabilitation, treatment and doctors' appointments.  Her mother-in-law died in 1999.[4]  From 1999 through 2002, plaintiff performed seasonal work sorting mail for the United States Postal Service.

Plaintiff suffers from back pain and depression.  Plaintiff's back pain dates back to at least the mid 1980s and has worsened over time.[5]  Plaintiff became depressed during her

---

[3]        Social security insurance was apparently not withheld from these payments.

[4]        Plaintiff has testified inconsistently about what year her mother-in-law died.  It has ranged from 1997 to 1999.

[5]        Plaintiff has testified inconsistently about the onset of her back pain.  While the record contains medical evidence that she does indeed suffer from back pain, plaintiff has testified variously that the back pain dates back to the mid 1980s and has progressively
(continued…)

mother's illness in 1996 and she has taken various anti-depressants since then, with mixed results.[6] In 1996, she could manage her back pain with over-the-counter medicine and periods of rest.

### B.  Medical Evidence

Few of plaintiff's existing medical records cover the period between August of 1996 and December of 1997.  During this period, Dr. Ross Sciara served as her primary care physician, but he retired some time before plaintiff filed her disability claim and no one has been able to locate Dr. Sciara's medical records.  In 2009, Dr. Sciara provided a letter which states that to the best of his recollection, he treated plaintiff for depression and back pain dating back to 1996, that he prescribed her several anti-depressants and that he referred her to Dr. Elias Chediak for an evaluation.  The letter offers no opinion about the severity of her condition or her ability to work in 1996 and 1997.  Plaintiff's only medical records from this period include (1) emergency room records from Stormont Vail Regional Medical Center in Topeka where she was treated on March 27, 1997 for bronchitis and difficulty breathing; on September 28, 1996 for suture removal; and on September 18, 1996 for a cut on her arm; and (2) records from Dr. Dennis Anthony, Anthony Chiropractic Clinic, which indicate that he treated her for severe lower back pain three times in July of 1997 and once in July of 1995.  Dr. Anthony treated plaintiff with spinal adjustments and electrical stimulation.  His records contain no opinion about her ability to work.

On June 23, 1998, at the referral of Dr. Sciara, plaintiff saw Dr. Elias Chediak for a

---

worsened, that it dates back to 1971, that she injured her back in August of 1996 while caring for her mother and that no specific injury caused her back pain.

[6]      Plaintiff has also testified inconsistently about the onset of her depression. Plaintiff has variously attributed the onset of her depression to her mother's illness and death in 1996, her inability to work, and her move to the farm in 1992.

history of low energy. Dr. Chediak diagnosed her with atypical depression and dysthymic disorder. She stayed for half a session and did not return.

Plaintiff has no medical records for the period from 1999 to 2002.

In 2003, Family Medicine Associates treated plaintiff various times in Lawrence for depression, fatigue, weight management, shoulder pain and back pain. On November 26, 2003, as part of her disability application, Dr. R.E. Schulman conducted a psychiatric review technique for the period between January 1, 1996 and December 31, 1997. Dr. Schulman found no medical evidence to support a finding that plaintiff was disabled before December 31, 1997. On March 17, 2004, Dr. John Gilbert evaluated plaintiff at Kansas Orthopedics & Sports Medicine to document her disability claim. He found that her x-rays showed advanced degenerative disease and grade 1 spondylolisthesis but gave no opinion about her ability to work.

On July 9, 2007, Dr. Lynn A. Curtis evaluated plaintiff at the referral of the disability determination services. Dr. Curtis found that plaintiff has degenerative disc disease and arthritis of the spine, right carpal tunnel syndrome, mild to moderate degenerative disease of both hands, a history of depression, probable degenerative joint disease of her cervical spine, mild knee pain, mild range of motion loss in her shoulders, grade 1 spondylolisthesis and a history of left carotid artery dissection. Regarding work restrictions, Dr. Curtis found that plaintiff should operate at a sedentary level with several restrictions. Finally, Dr. Curtis determined that plaintiff's past limitations were first present on March 17, 2004 (the date of her previous exam).

On October 27, 2007, Dr. Barbara Bowman provided a letter to plaintiff's attorney which states that plaintiff came to therapy with significant depression and PTSD. The letter indicates that she treated plaintiff some time between her mother's death and 2004, but provides no specific treatment dates or other information. After the most recent remand, plaintiff and the

ALJ both attempted without success to obtain additional records from Dr. Bowman.

### C.  Vocational and Medical Expert Testimony

No vocational or expert medical testimony was proffered at plaintiff's first two hearings.

At the remand hearing on January 14, 2008, two experts testified.  Dr. Arthur Brovender, an orthopedic surgeon, testified by phone.  After reviewing plaintiff's medical records, Dr. Brovender opined that plaintiff's condition was not severe between 2003 and 2007, and thus could not have been severe during the relevant period (between August of 1996 and December of 1997). He acknowledged that in 2004, plaintiff had advanced degenerative changes in her spine, but could offer no opinion as to how long those changes had been occurring except to say they did not occur "overnight."

Denise Waddell, a vocational consultant, testified in person.  She reviewed plaintiff's work history, which included work as (1) a mail sorter, which is light, semiskilled; (2) a home health aide, which is medium, semiskilled; and (3) a sewing machine operator, which is light, semiskilled.  She opined that these jobs could be performed with mildly impaired concentration. She also confirmed that a person with the residual functional capacity to do light work which involved lifting and carrying up to 20 pounds occasionally and 10 pounds frequently could return to a job as a machine operator and perform work as a mail sorter (as plaintiff later did).  She also confirmed that such a residual functional capacity would have precluded work as a home health aide, but that plaintiff was in fact performing that kind of work during the period in question.

Amy Salva, a vocational expert, testified at the hearing on June 10, 2010 before ALJ Deborah Bice.  Ms. Salva reviewed plaintiff's work history, which included work as (1) a mail sorter, considered to be light level, semi-skilled with an specific vocational preparation ("SVP") level of three; (2) a home health aide which is medium, semiskilled with an SVP level of three;

(3) a machine operator which is light level, semiskilled with an SVP level of three; and (4) an electronics assembler which is light level and unskilled, with an SVP level of two.  The jobs at SVP level three would take between one and three months to learn, and from those jobs plaintiff would have no acquired work skills which were transferrable to other occupations.  She confirmed that a 50- to 55-year-old person with a GED, plaintiff's past work history, and a limitation against working in a hazardous environment could perform plaintiff's past work except the machine operator position.  She opined that a similar person who also could not perform detailed or complex work that would take more than six months to learn and would require precise attention to detail could still perform the electronics assembling work.

She testified that an individual whose inability to concentrate caused her to be off task two-thirds of the day could not maintain competitive employment, and someone limited to sedentary work and unable to lift more than five pounds would not be able to perform any of plaintiff's past work or any other job in the national economy.

### III.     ALJ Findings

In her order of August 25, 2010, the ALJ concluded in part as follows:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 1997.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of August 1, 1996,[7] through her date last insured of December 31, 1997.

3. Through the date last insured, the claimant had the following severe impairment: low back pain.

---

[7]        See n.2, supra.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations. She should avoid working in hazardous environments such as unprotected heights and around dangerous machinery and water. She cannot perform detailed or complex tasks that would take more than six months to learn.

6. Through the date last insured, the claimant was capable of performing past relevant work as a [sic] electronics assembler and mail sorter. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

**7.** The claimant was not under a disability, as defined in the Social Security Act, at any time from August 1, 1996, the alleged onset date, through December 31, 1997, the date last insured (20 CFR 404.1520(f)).

**IV.    Standard of Review**

The ALJ decision is binding on the Court if supported by substantial evidence. See 42 U.S.C. § 405(g); Dixon v. Heckler, 811 F.2d 506, 508 (10th Cir. 1987). The Court must determine whether the record contains substantial evidence to support the decision and whether the ALJ applied the proper legal standards. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010). Substantial evidence is "such relevant evidence as a reasonable mind might accept as

9

adequate to support a conclusion." Fowler v. Bowen, 876 F.2d 1451, 1453 (10th Cir. 1989).  In addition to a lack of substantial evidence, the ALJ's failure to apply the correct legal standards, or to show us that she has done so, are also grounds for reversal.

**V.**     **Analysis**

Plaintiff bears the burden of proving disability under the Social Security Act.  Wall v. Astrue, 561 F.3d 1048, 1062 (10th Cir. 2009).  The Social Security Act defines "disability" as follows:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

42 U.S.C. § 423(d)(1)(A).   To determine whether a claimant is under a disability, the Commissioner applies a five-step sequential evaluation: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) whether the impairment prevents the claimant from continuing his past relevant work; and (5) whether the impairment prevents the claimant from doing any kind of work. See 20 C.F.R. §§ 404.1520, 416.920.  If a claimant satisfies steps one, two and three, he will automatically be found disabled; if a claimant satisfies steps one and two, but not three, he must satisfy step four.  At step four, the ALJ is required to make specific findings of fact at three phases:  (1) the individual's residual functional capacity, (2) the physical and mental demands of prior jobs or occupations and (3) the ability of the individual to return to the past occupation given his or her residual functional capacity. Henrie v. U.S. Dep't of HHS, 13 F.3d 359, 361 (1993); Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996).  If the claimant satisfies step

four, the burden shifts to the Commissioner to establish that the claimant is capable of performing work in the national economy.  See Jensen v. Barnhart, 436 F.3d 1163, 1168 (10th Cir. 2005).

In the most recent decision, the ALJ denied benefits at step four, finding that through the date last insured (December 31, 1997) with some nonexertional limitations, plaintiff had the residual functional capacity to perform a full range of work including past relevant work as an electronics assembler and mail sorter.  Plaintiff asserts that the ALJ did not apply the correct legal standard at the three phases of step four.  She argues that at phase one, the ALJ did not assess the nature and extent of plaintiff's physical limitations to determine her residual functional capacity for work activity.  Next, at phase two, she argues that the ALJ failed to consider the demands of plaintiff's past relevant work.  These failures, plaintiff argues, invalidate the ALJ conclusion at phase three regarding plaintiff's ability to return to her past occupation given her residual functional capacity.  Plaintiff also asserts that the ALJ failed to properly develop the record because a medical expert did not assess plaintiff's residual functional capacity.  The Commissioner responds by noting that while the ALJ decision made a number of errors, the errors were favorable to plaintiff and tend to show that the ALJ correctly concluded that plaintiff did not meet her burden to show disability during the relevant period.  The Court addresses each of plaintiff's objections in turn.

**A. Phase One:  Assessment Of Plaintiff's Physical Limitations**

First, plaintiff argues that the ALJ did not assess the nature and extent of her physical limitations to determine her residual functional capacity for work activity.  Specifically, plaintiff complains that even though the ALJ found that plaintiff suffered from severe low back pain, the ALJ did not cite specific objective medical evidence to support this finding.  Plaintiff argues that

the ALJ should have considered (1) the report of Dr. Curtis, which notes that plaintiff's physical impairments existed at least since March 17, 2004; (2) the record from Dr. Gilbert, which indicates that on March 17, 2004, plaintiff had advanced degenerative disease and grade I spondylolisthesis and acknowledges that plaintiff had been under chiropractic care since 1995; and (3) records from Anthony Chiropractic Clinic dated July 21, 1995 and July 31, 1997, which indicate that plaintiff was suffering from various back pain symptoms.[8]

Plaintiff's argument on this point is confused.[9]  First, while plaintiff purportedly finds fault with the ALJ evaluation at phase one of step four, her complaint seems directed more toward the ALJ finding—at step two—that plaintiff suffers from severe back pain, a finding which, as the Commissioner points out, favored plaintiff.  And while the ALJ did not specifically refer to these records upon concluding at step two that plaintiff suffered from severe back pain, her extensive assessment of plaintiff's physical limitations at step four references the report of Dr. Curtis and the records from Anthony Chiropractic Clinic.  See Doc. #10-5, 3-7.  Her lengthy

---

[8]    Plaintiff also argues that the ALJ improperly refused to give weight to the records from Anthony Chiropractic Clinic because chiropractors are not acceptable medical sources.  She then posits that the records corroborate the findings of Dr. Gilbert in 2004 and Dr. Curtis in 2007 and that the ALJ should therefore have considered all of them together to find that plaintiff is disabled.  The Court disagrees.  The ALJ considered the chiropractic records, which indicate that plaintiff had paravertebral spinal and joint swelling and decreased cervical range of motion, and was "slowly improving."  The ALJ concluded, however, that those records merited little weight because Dr. Anthony is not an acceptable medical source and because plaintiff's description of her daily activities and the treatment note from Dr. Chediak indicated that plaintiff had minimal difficulty functioning during the relevant time frame.

[9]    The Court attributes most of this confusion to a relatively poor job of "cutting and pasting" by plaintiff's counsel while preparing plaintiff's brief, which includes quotes from portions of the record which do not exist, mischaracterizes plaintiff as "he," and refers to treating physicians who are not involved in this case.  See, e.g. Doc. #20 at 14 (referring to plaintiff as "he" and noting that the ALJ found plaintiff able to return to past relevant work as "a general laborer"); at 21 (purportedly quoting from the ALJ discussion of Dr. Bean, a consulting psychologist who does not appear in this case, at a portion of the record which does not contain the ALJ decision).

evaluation chronicles plaintiff's medical records and the statements of plaintiff and her daughter to determine plaintiff's physical limitations.  In reaching her conclusion, she determined that plaintiff's subjective complaints about the degree and duration of her back pain and depression were not fully credible, a conclusion which plaintiff does not challenge and which is supported by medical evidence.  See Townsend v. Apfel, 176 F.3d 489 (table), at *2 (10th Cir. Apr. 9, 1999); see also Giesler v. Astrue, No. 10-1412-JWL, 2011 WL 4691935, at *6 (D. Kan. Oct. 5, 2011) (ALJ may discount or reject medical opinion not supported by record evidence).

Finally, to the extent plaintiff complains about the degree to which the ALJ considered the effect of plaintiff's mental impairments at this phase, those complaints are unfounded.[10] With respect to plaintiff's mental health, the ALJ identified and analyzed both subjective evidence presented by plaintiff and the scant objective medical evidence which referenced plaintiff's mental health symptoms, and concluded that no medically determinable or otherwise credible reason precluded plaintiff from performing the full range of work.  The Court thus finds that the record contains substantial evidence to support the ALJ findings at this phase.

**B.  Phase Two:  Demands Of Plaintiff's Past Relevant Work**

At phase two, plaintiff argues that the ALJ did not inquire into or make a specific finding about the physical or mental demands of plaintiff's past relevant work.  In the Tenth Circuit, an ALJ may rely upon vocational expert testimony in making findings at phase two of step four. Christopher v. Astrue, 479 F. Supp.2d 1206, 1211 (D. Kan. 2007).  While the ALJ may not delegate the step-four analysis to the vocational expert, she may rely on information supplied by the vocational expert regarding the demands of plaintiff's past relevant work and whether a

---

[10]    See n.9, supra.  The bulk of plaintiff's argument on this point consists of a quotation which appears nowhere in the record and references testimony of a Dr. Bean, who also is not involved in this case.

person with plaintiff's residual functional capacity could meet those demands.  Id.

Here, with regard to plaintiff's past relevant work, the ALJ relied on information supplied

by the vocational expert, noting that

> The vocational expert stated claimant's past work as a mail sorter
> and machine operator was semi-skilled work requiring a light level
> of exertion, as a home health aide was semi-skilled work requiring
> a medium level of exertion and as an electronics assembler was
> unskilled work requiring a light level of exertion.

Doc. #10-5, 8.  While these ALJ findings regarding plaintiff's past relevant work are light,

plaintiff points to no demand of her past relevant work either as she performed it or as it was

generally performed which the ALJ ignored or overlooked.  Instead, she merely argues error as a

as a matter of law, which is insufficient. See e.g. Christopher, 479 F. Supp.2d at 1212.

### C.  Phase Three:  Plaintiff's Ability To Return To Past Work

Plaintiff's argument at phase three is based upon the alleged errors at phase one and

phase two.  Because she failed to show error in phase one or two, this argument also fails. Id.

The ALJ asked the vocational expert a hypothetical question about plaintiff's ability to perform

past work.  She considered and adopted the response, and stated her findings that plaintiff was

able to perform the physical and mental demands of work as an electronics assembler or mail

sorter as it is actually and generally performed.  This finding is sufficient and supported by

substantial evidence in the record.

### D.  Development of Record:  Residual Functional Capacity

Finally, plaintiff argues that the ALJ failed to develop the record with regard to plaintiff's

residual functional capacity.  Specifically, plaintiff argues that nothing in the record supports the

ALJ finding that plaintiff could perform a full range of work at all exertional levels with the

nonexertional limitations that she should avoid working in hazardous environments such as

unprotected heights and around dangerous machinery and water, and could not perform detailed or complex tasks that would take more than six months to learn.  Plaintiff insists that the ALJ "made up her own RFC based on nothing but thin air" and that no doctor ever prepared a Residual Functional Capacity.

Plaintiff ignores, however, the fact that among other things, the residual functional capacity report prepared by Dr. Curtis in 2007 states that beginning March 17, 2004, plaintiff should not climb ladders, walk in unprotected heights or tolerate exposure to moving mechanical parts.  The ALJ decision analyzes and quotes from this report.  From the decision and record, it is unclear why the ALJ also included the nonexertional limitations that plaintiff should avoid working around water and could not perform complex tasks which would take more than six months to learn.  These limitations, however, benefit plaintiff.  Indeed, plaintiff does not point to specific limitations which she contends the ALJ should have considered or developed further.  Rather, she ignores the RFC prepared by Dr. Curtis (which dates back to 2004) and contends only that as a matter of law, the ALJ incorrectly extrapolated the noted nonexertional limitations.  In this instance, the Court is confident that no reasonable administrative factfinder would have concluded that omitting these nonexertional limitations would require a change in the ALJ decision.  Cullen v. Astrue, 480 F. Supp.2d. 1258, 1269-70 (D. Kan. 2007).

**IT IS THEREFORE ORDERED** that the Commissioner's decision be and hereby is **AFFIRMED.**

Dated this 28th day of February, 2012 at Kansas City Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge